## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

Deja Bost,

                                        Plaintiff,

         v.                                          1:25-CV-1076
                                                     (ECC/MJK)


CSCO Henson *et. al.*,


                                        Defendant.

---

Deja Bost, *Pro Se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Elizabeth C. Coombe, U.S. District Judge:

### ORDER & REPORT- RECOMMENDATION

Deja Bost began this action on August 11, 2025, by filing a complaint, and moving for leave to proceed *in forma pauperis* ("*IFP*") (Dkts. 1, 2). The Clerk sent Bost's Complaint and *IFP* application to this Court for review. (Dkts. 1, 2).

## I.      BACKGROUND

### A. Facts

On May 4, 2025, Deja Bost was denied visitation at Coxsackie Correctional Facility because staff alleged that she smelled like marijuana. (Complaint, Dkt. 1, at pg. 2). Coxsackie's Superintendent banned Bost for one year (*Id.*; Exhibit A at pg. 1). Bost appealed that

ban, and the Superintendent reversed the decision. (Complaint, Dkt. 1, at pg. 3).

On July 26, 2025, Bost arrived at Coxsackie for a 9:00 a.m. scheduled visit. (Complaint, Dkt. 1, at pg. 2). Despite being cleared by the Superintendent's office, she was denied visitation after a body scan showed what she disclosed was a tampon. (*Id.*). Bost offered to replace the tampon or resubmit to a scan, but Defendants refused. (*Id.*). Specifically, Bost alleges that CO Henson and Sgt. Morton denied the visit and mocked her, referencing her prior denied visit. (*Id.*).

The next day, Bost returned to Coxsackie and Coxsackie staff permitted Bost to enter for her scheduled visit. (*Id.*). During her visit, Bost's property, including but not limited to her iPhone 16 Plus, was stolen from locker #4. Bost's property was found in locker #3, but Staff could not find her phone. (*Id.*). Bost "believes she is being retaliated against for her prior complaints" and is being "subjected to discriminatory treatment." (*Id.*). Bost claims that "the superintendent later confirmed a special investigation team could review body scan images, but this was not offered on site" (*Id.*) (cleaned up).

## B. Procedural History

Bost now sues Defendants CSCO Henson, Sgt. Morton, and Coxsackie Supervisory Staff alleging: (1) violations of "the First and Fourteenth Amendments by retaliating against her for complaints;" (2) "unequal treatment and gender-based discrimination; and (3) negligence. (Complaint, Dkt. 1, pg. 2). Bost seeks compensatory and punitive damages. (*Id.*).[1]

## II.    *IFP* APPLICATION

Bost declares in her *IFP* application that she is unable to pay the filing fee. (Dkt. 2). After reviewing her application, this Court finds Bost is financially eligible for *IFP* status.

## III.    STANDARD OF REVIEW

In addition to determining whether plaintiffs meet the financial criteria to proceed *IFP*, courts must also review the sufficiency of the allegations in the complaint under 28 U.S.C. § 1915. That statute requires a court to dismiss a case—at any time—if it determines that the action is (1) frivolous or malicious; (2) fails to state a claim on which

---

[1] "Supervisory staff" is not a proper way to name Defendants. So the Complaint, as to these Defendants, fails to comply with Fed. R. Civ. P. 10's requirement that all Defendants must be named. *See* Fed. R. Civ. P. 10(a).

relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process and to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

To be sure, courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when *sua sponte* dismissing *pro se* complaints before adverse parties have been served and had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). But courts *still* have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## IV.  DISCUSSION

The Court recommends dismissing Bost's claims without prejudice and with leave to amend for four reasons. First, Bost's Complaint fails to state a claim, so it is deficient under Fed. R. Civ. P. 8. Second, Bost's Complaint cannot establish a procedural due process claim. Third, Bost's Complaint cannot establish a First Amendment retaliation claim. Finally, there is no futility.

### A. Bost's Complaint does not comply with Federal Rules of Civil Procedure 8.

Pleadings must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief …" Fed. R. Civ. P. 8(a)(2). "The purpose of" Rule 8 "is to give fair notice of the claim being asserted so" adverse parties have "the opportunity to file a responsive answer, prepare an adequate defense, and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (cleaned up). The rule also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must

be simple, concise, and direct.'" *Cole v. Smrtic*, No. 1:24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. 2024) (quoting Fed. R. Civ. P. 8(d)). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Indeed, to survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft*, 556 U.S. at 678 (cleaned up).

The Court should dismiss Bost's claims against all Defendants. The Complaint alleges how Defendants retaliated against her by denying her visit and mocking her. *See* (Complaint, Dkt. 1, at pg. 2). Yet, the next day Bost was allowed to enter the prison. (*Id.*). Likewise, Bost alleges negligence but fails to allege any of the claim's elements. Beyond that, Bost alleges gender discrimination but fails to plead the necessary requirements to establish a gender discrimination case. Put

another way, Bost's Complaint is a "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. And that is not enough to state a claim. *See, e.g., Lesson v. Jane Doe*, No. 1:25-CV-00188 (AMN/TWD), 2025 WL 1291533 (N.D.N.Y. May 5, 2025) (Adopting Report and Recommendation which dismissed a plaintiff's excessive force claim because that plaintiff failed to "identify what force" was used against him or "how it was excessive.").

### B. There is no procedural due process clause violation because Bost does not have a protected liberty interest.

Liberally read, Bost's Complaint seems to allege a procedural due process violation. *See* (Complaint, Dkt. 1, at 2). But that claim is unable to meet § 1915's relaxed review. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). So, to prevail on a procedural due process claim, plaintiffs must show that they were "deprived of a protected property or liberty interest without notice and an opportunity to be heard." *Paul v. Capra*, No. 20-CV-5154(NSR), 2022 WL 992845, at *9 (S.D.N.Y. Mar. 31, 2022). But neither the Due Process clause nor New

York State law creates a protected liberty interest for the family of incarcerated person to have contact visits. *See Gatson v. Selsky*, No. 94-CV-292(RSP/GJD), 1997 WL 159258, at \*4 (N.D.N.Y. Apr. 4, 1997) (holding that the plaintiff's wife did not have a liberty interest in family reunion or conjugal visits). Here, the Court finds that Bost has failed to state a procedural due process claim. Bost does not have a protected liberty interest in seeing an incarcerated person. *See Gatson*, 94-CV-292 at \*4. And because that's true, Bost's Complaint needs to identify another liberty interest DOCCS deprived her of, and it does not. *See generally,* (Complaint, Dkt. 1). Beyond that, the Complaint cannot establish a notice violation because Bost was given notice of the 1-year suspension, she appealed it, and she won. *See Exhibit A*. All that said, Bost's Complaint does not plausibly allege a procedural due process violation.

### C. Bost's Complaint does not establish a First Amendment violation.

"To plead a First Amendment retaliation claim a plaintiff must show: (1)" they have "a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by" their "exercise of that right; and (3) the defendant's actions caused" the

plaintiff "some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Here, Bost has not established any First Amendment right that DOCCS violated. Without that, the Complaint is deficient. Bost's Complaint also does not establish injury, as she only alleges that Henson and Morton were rude. *See Mills v. Fischer*, 497 F. App'x 114, 117 (2d Cir. 2012) (Finding that "where plaintiffs alleged only rudeness and not malice," even liberally construed, the Complaint "failed to state a plausible claim under the First Amendment."). As a result, Bost's Complaint cannot make out a First Amendment retaliation claim.

### D. Bost should be allowed to amend her Complaint.

Before courts dismiss a pro se complaint or any part of the complaint sua sponte, it should afford the plaintiff the opportunity to amend at least once. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). But leave to re-plead may be denied where any amendment would be futile. *See id*. Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Here, the Court recommends dismissing Bost's claims without prejudice and with leave to amend because there is no futility.

## V.    CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion to proceed *IFP* (Dkt. 2) is

**GRANTED**; and it is further

**RECOMMENDED**, the District Court dismiss Bost's Complaint

**WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND** because it

fails to comply with Fed. R. Civ. P. 8; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order

and Report-Recommendation on Plaintiff by regular mail.

Under 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties

have 14 days within which to file written objections to the foregoing

report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS**

**WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*,

984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and*

*Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed.

R. Civ. P. 6(a), 6(e), 72.


Dated: August 26, 2025

_____
Hon. Mitchell J. Katz
U.S Magistrate Judge

Gatson v. Selsky, Not Reported in F.Supp. (1997)

Case 1:25-cv-01076-ECC-MJK    Document 4    Filed 08/26/25    Page 11 of 32

1997 WL 159258
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Henry GATSON and Gwen Gatson, Plaintiffs,

v.

Donald SELSKY, Special Housing/Inmate Disciplinary Program, Department of Correctional Services;
James J. Plescia, Director, Department of Correctional Services Family and Ministerial Services; Lynn
Anderson, Family Reunion Coordinator at Auburn Correctional Facility; Donald Seitz, Lt., Acting
Captain, Hearing Officer at Auburn Correctional Facility; Reginald Cotter, Corrections Officer at Auburn
Correctional Facility; Allen Zentner, Corrections Officer at Auburn Correctional Facility, Defendants.

No. 94–CV–292(RSP/GJD).
|
April 4, 1997.

**Attorneys and Law Firms**

Henry Gatson, Collins, NY, Pro Se.

Gwen Gatson, Rochester, NY, Pro Se.

Dennis C. Vacco, New York State Attorney General, Ellen Lacy Messina, Assistant Attorney General, of counsel, Albany, NY.


MEMORANDUM DECISION AND ORDER

POOLER, District Judge.

 **\*1** Defendants Donald Selsky, James J. Plescia, Lynn Anderson, Donald Seitz, Reginald Cotter, and Allen Zentner moved for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs *pro se* Henry and Gwen Gatson opposed the motion, and moved for partial summary judgment on behalf of Mrs. Gatson pursuant to Rule 56.


BACKGROUND

At the time of the disputed conduct, Gatson was a state prison inmate at the Auburn Correctional Facility ("Auburn"). Gatson and his wife participated in a "Family Reunion" visit on February 25 through 27, 1993. The Family Reunion Program provides inmates and their families an opportunity for extended visits. In accordance with New York State Department of Correctional Services ("DOCS") Directive No. 4500 ("Directive 4500") and N.Y. Comp.Codes R. & Regs. tit. 7, § 220.8, both before and after the Family Reunion visit, Gatson submitted a urine specimen to be tested for controlled substances. Defendant Correction Officer Zentner tested the specimen taken immediately after the visit, and the result was positive for cannabinoids. The same specimen was re-tested by defendant Correction Officer Cotter three days later, and the result again was positive. Cotter then tested the specimen taken immediately before Gatson's Family Reunion visit and the result was negative. Cotter issued a Tier III misbehavior report charging Gatson with use of a controlled substance in violation of DOCS rule 113.12.

At Gatson's Tier III disciplinary hearing, which was conducted by defendant Lieutenant Seitz from March 6 through 23, 1993, Gatson denied using marijuana during his Family Reunion visit, and contended that his urine sample must have been mixed up

Gatson v. Selsky, Not Reported in F.Supp. (1997)

Case 1:25-cv-01076-ECC-MJK    Document 4    Filed 08/26/25    Page 12 of 32

with that of another inmate, or perhaps was tested inaccurately. In particular, he alleged that Cotter and Zentner violated N.Y. Comp.Codes R. & Regs. tit. 7, § 1020.4(e)(1)(ii) by failing to maintain a separate log book recording the time at which samples were removed from and returned to the freezer.

On March 23, Seitz found Gatson guilty of violating Rule 113.12 and imposed the penalty of fourteen days keeplock with 14 days loss of telephone and commissary privileges (already served). Based on the disciplinary hearing determination and pursuant to Directive 4500, the Family Reunion Coordinator, defendant Lynn Anderson, found that Gatson was ineligible for Family Reunion visits for one year, and that following the one-year suspension, both he and his wife would be required to show proof of participation in a drug education program before being allowed to resume their participation in the Family Reunion visit program. Until those conditions were met, Gatson and his wife were still allowed visitation, but not the extended visits available through the Family Reunion Program.

On March 22, while the hearing was still ongoing, Gatson submitted an administrative appeal regarding his hearing. On May 12, 1993, the Director of Special Housing/Inmate Discipline, defendant Donald Selsky, affirmed the determination that Gatson was guilty of violating Rule 113.12. Gatson also sent a letter to a DOCS clergyman concerning the one-year loss of Family Reunion visits. Defendant James Plescia, Director of DOCS Family and Ministerial Services, responded by letter that he could not help Gatson unless Gatson could refute the urinalysis results. Shortly thereafter, Gatson was transferred from Auburn to Riverview Correctional Facility ("Riverview"). Riverview does not have a Family Reunion Program.

**\*2** In the interim, Gatson filed an Article 78 petition with the Albany County Supreme Court Clerk, challenging the results of the disciplinary hearing. The matter was transferred to the Appellate Division, which dismissed Gatson's Article 78 petition.

Gatson commenced the instant action pursuant to 42 U.S.C. § 1983 on March 9, 1994. His amended complaint, filed on May 18, 1995, also names Gatson's wife, Gwen, as a plaintiff. The plaintiffs allege that Zentner and Cotter violated Gatson's constitutional rights by failing to comply with N.Y. Comp.Codes R. & Regs. tit. 7, § 1020.4(e)(1)(ii)'s requirement of maintaining a freezer log book when conducting urinalysis tests. Mrs. Gatson further contends that because Gatson was unable to present the nonexistent logbook as evidence, which allegedly was necessary to prove his innocence at the Tier III hearing, she was deprived of her Ninth Amendment right to marital privacy. In particular, she was deprived of Family Reunion visits with Gatson for one year, and was required to complete a drug education program before resuming such visits.

Plaintiffs' claims against the defendants other than Cotter and Zentner are derivative of the claims against Cotter and Zentner. Each of the other defendants is alleged to have violated Gatson's constitutional rights by committing the following acts, when each allegedly knew that Gatson's due process rights already had been violated by Zentner and Cotter: Seitz, by finding Gatson guilty at the disciplinary hearings; Anderson, for refusing to authorize his Family Reunion visits; Plescia, for sanctioning Gatson's loss of Family Reunion visits; and Selsky, for affirming Gatson's punishment. Additionally, Mrs. Gatson claims that all defendants defamed her, deprived her of her right to defend "the charge against her character," and that Plescia deprived her of her Sixth Amendment right to confront her "accusers, (defendants)." (Am. compl. at 10). Plaintiffs further allege that Selsky deliberately transferred Gatson to a prison without a Family Reunion Program, and that they have suffered emotional pain and mental anguish as a result of being illegally denied Family Reunion visits. Plaintiffs seek injunctive relief in the form of a court order compelling defendants to immediately allow them to resume participation in the Family Reunion Program, and monetary damages.

DISCUSSION

I. Standards

I may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d

Gatson v. Selsky, Not Reported in F.Supp. (1997)

Case 1:25-cv-01076-ECC-MJK    Document 4    Filed 08/26/25    Page 13 of 32

202 (1986). The moving party has the burden of identifying the evidence that it believes demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Which facts are material is determined by the substantive law at issue. *See Anderson,* 477 U.S. at 248. In determining whether summary judgment is appropriate, I resolve all ambiguities and draw all reasonable inferences against the moving party. *See Cifarelli v. Village of Babylon,* 93 F.3d 47, 51 (2d Cir.1996).

**\*3** Furthermore, because plaintiffs are proceeding *pro se* I "read [their] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (quotation omitted).

## II. Defendants' Motion
In support of their motion for summary judgment, defendants argue that plaintiffs failed to state a claim.

### A. Due Process Claims
Pursuant to the Fourteenth Amendment, prisoners may not be denied life, liberty or property without due process of the law. *See Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). To prevail on their due process claims, plaintiffs must prove that they have "a protected liberty interest, and if so, that [they were] deprived of sufficient process to protect that interest." *Brewton v. Hollister,* 948 F.Supp. 244, 248 (W.D.N.Y.1996). Whether sufficient process has been provided requires a balancing of the respective interests and the risk of erroneous deprivation. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

#### 1. Transfer
Plaintiffs claim that Gatson was deliberately transferred to a prison without a Family Reunion Program. Defendants correctly state that no liberty interest can arise from a transfer. Prison officials have the discretion to transfer an inmate at any time and for any reason. *See Meachum v. Fano,* 427 U.S. 215, 228, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Thus, the transfer of Gatson to a facility that does not have a Family Reunion Program does not implicate any liberty interest.

#### 2. Conjugal Visits
As provided by both Directive 4500 and N.Y. Comp.Codes R. & Regs. tit. 7, § 254.7(a), an inmate found guilty of having used drugs during a Family Reunion visit is suspended from participation in the Family Reunion Program for one year, and both the inmate and his or her family member(s) are required to participate in a drug education program before they are allowed to resume participation thereafter. Gatson claims he was denied due process when the prison terminated his Family Reunion visits. Mrs. Gatson claims she was deprived of her right to marital privacy because of the discontinuance of the Family Reunion visits.

It is well established that contact visits for prisoners are only a privilege and not a right. *See Block v. Rutherford,* 468 U.S. 576, 589, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984); *Toussaint v. McCarthy,* 801 F.2d 1080, 1113 (9th Cir.1986) (reviewing cases), *cert. denied,* 481 U.S. 1069 (1987); *cf. Smith v. Coughlin,* 748 F.2d 783, 788 (2d Cir.1984) (ban on contact visits does not violate a prisoner's first amendment rights). Prohibition of contact visits can be vital to the internal security of a prison. *See Block,* 468 U.S. at 586–87. Whether a facility offers or restricts a conjugal visitation program is within the discretion of facility. *See Viserto v. Coombe,* No. 92–CV–0632, 1995 WL 643845, at \*2 (W.D.N.Y. Oct. 13, 1995); *Cromwell v. Coughlin,* 773 F.Supp. 606, 611 (S.D.N.Y.1991). Thus, Gatson's loss of the Family Reunion visits does not implicate a liberty interest.

**\*4** Mrs. Gatson has no greater constitutional interest than her husband. Although noninmates do not relinquish their constitutional rights when they enter a prison facility, those rights may be subject to certain limitations. *See Varrone v. Bilotti,* 867 F.Supp. 1145, 1148 (E.D.N.Y.1994). The Second Circuit has acknowledged that "[c]ontacts between inmates and noninmates may justify otherwise impermissible intrusions into the noninmates' privacy." *United States v. Willoughby,* 860 F.2d 15, 21 (2d Cir.1988), *cert. denied,* 488 U.S. 1033 (1989); *see Varrone,* 867 F.Supp. at 1148. This includes limitations on conjugal visits,

Gatson v. Selsky, Not Reported in F.Supp. (1997)

Case 1:25-cv-01076-ECC-MJK    Document 4    Filed 08/26/25    Page 14 of 32

which courts have found constitutionally permissible for prison facilities to forbid. *See Block,* 468 U.S. at 589. Thus, Mrs. Gatson does not have a liberty interest in conjugal visits.

Therefore, I find no liberty interest has been implicated in either the transfer of Gatson to a prison facility without Family Reunion Visits, or the restriction of conjugal visits. As such, it is not necessary to evaluate whether the failure to follow the procedures of the urinalysis test or the denial of certain documents at the disciplinary hearing constituted a denial of due process with respect to these claims.

### 3. Confinement and Loss of Privileges

N.Y. Comp.Codes R. & Regs. tit. 7, § 1020.4(e)(1)(ii) requires that a log book in the vicinity of the refrigerator or freezer be maintained, and that each person accessing the specimens note their name, the date, and the time of each such access. Gatson contends that Zentner and Cotter failed to comply with this rule, thereby implicating a liberty interest in having DOCS rules followed. He also argues that his due process rights were violated because at the Tier III hearing he was unable to present the freezer log book, which allegedly represented documentary evidence necessary for his defense. I find these arguments to be without merit.

Because the information that section 1020.4(e)(1)(ii) requires to be maintained in a log book in the vicinity of the freezer (i.e., the name of each person accessing the specimens as well as the date and time of each such access) was recorded in the daily work sheet and urinalysis room log, I do not find that defendants failed to follow this DOCS directive. Second, even if Gatson's confinement and loss of privileges pursuant to N.Y. Comp.Codes R. & Regs. tit. 7, § 254.7(a)[1] implicates a liberty interest, I find no due process violation because the process he received was constitutionally sufficient.

Inmates generally have the right to present documentary evidence. *See Ponte v. Real,* 471 U.S. 491, 495, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). Gatson's argument that he was unable to present the non-existent freezer log book as documentary evidence is without merit because Gatson was given the daily work sheet and urinalysis room log, which recorded the information required by section 1020.4(e)(1)(ii). In fact, Gatson presented the documentary evidence of the daily work sheet and urinalysis room log at the hearing when he challenged their validity. Thus, I find that Gatson was not deprived of his right to present documentary evidence.

### C. Sixth Amendment Claims

**\*5** Mrs. Gatson alleges that her Sixth Amendment rights were violated because she was not afforded the opportunity to face her accusers. Defendants counter that Mrs. Gatson did not have any Sixth Amendment rights that could be violated, because there were no criminal proceedings brought against her.

Sixth Amendment rights are only enjoyed by accused persons subject to criminal trial, *see Gannett Co. v. DePasquale,* 443 U.S. 368, 379–80, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), and cannot be applied to any other individual, *see Tate v. Yenoir,* 537 F.Supp. 306, 308 (E.D.Mich.1982). Furthermore, "the sixth amendment's concept of an 'accused' person is limited to a person who has actually been charged with a crime or who has been taken into custody pending the filing of formal charges." *United States v. Costanza,* 549 F.2d 1126, 1132 (8th Cir.1977). Mrs. Gatson was not formally charged with any crime. She also was not taken into custody at any time. Mrs. Gatson does not fall within the parameters of the Sixth Amendment, and thus I find that she fails to state a Sixth Amendment claim.

### D. Defamation Claims

Mrs. Gatson also asserts a defamation claim against defendants for the false accusations she alleges were made against her. In particular, Mrs. Gatson alleges that she was falsely accused of supplying Gatson with a controlled substance during their Family Reunion visit. Defendants assert that the claim should be dismissed because state claims should be dismissed when all of the federal claims are terminated. In the alternative, defendants argue that Mrs. Gatson cannot fulfill the elements of defamation.

Gatson v. Selsky, Not Reported in F.Supp. (1997)

Case 1:25-cv-01076-ECC-MJK   Document 4   Filed 08/26/25   Page 15 of 32

If there is a cause of action stemming from federal jurisdiction and the connection between that claim and a state cause of action allows the opinion that the entire suit consists of one federal case, a federal court may exercise supplemental jurisdiction. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, the Supreme Court has stated on numerous occasions that if every federal claim is dismissed prior to the trial, the pending state claims usually should be dismissed as well. *See, e.g., Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

As I have dismissed all of plaintiffs' federal claims, I find it appropriate to dismiss Mrs. Gatson's state claim of defamation without prejudice.

III. Plaintiffs' Cross–Motion

Having determined to grant summary judgment to defendants on all issues, I find without merit plaintiffs' cross-motion for partial summary judgment.

CONCLUSION

For the foregoing reasons, defendants' motion pursuant to Rule 56 is granted, and plaintiffs' cross-motion is denied.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1997 WL 159258

---

**Footnotes**

1    Gatson's Tier HI hearing was a "Superintendent's Hearing." Penalties that may be imposed pursuant to a Superintendent's Hearing can include one or more of the penalties specified in N.Y. Comp.Codes R. & Regs. tit. 7, § 254.7(a), such as: counsel or reprimand; loss of specified privileges for a specified period; confinement to a cell or special housing unit; if so confined, being fed a different diet than that of the general prison population; and restitution for loss or intentional damage to property. The penalties actually imposed on Gatson were fourteen days in keeplock, fourteen days loss of phone privileges, fourteen days loss of commissary, fourteen days loss of delivery of packages, already served, and the recommended loss of participation in the Family Reunion Program for one year with subsequent participation contingent upon participation in a drug education program.

---

End of Document                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1291533
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott LESSON, Plaintiff,

v.

Jane DOE / State Trooper, Defendant.

1:25-cv-00188 (AMN/TWD)
|
Signed May 5, 2025

**Attorneys and Law Firms**

SCOTT LESSON, Saratoga County Jail, 6010 County Farm Road, Ballston Spa, New York 12020, Plaintiff, pro se.

**ORDER**

Anne M. Nardacci, United States District Judge:

## I. INTRODUCTION

 **\*1** On February 10, 2025, *pro se* plaintiff Scott Lesson ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against an unknown New York State Trooper. Dkt. No. 1 ("Complaint"). Plaintiff sought and was granted leave to proceed *in forma pauperis*. Dkt. Nos. 4, 6.

This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks, who reviewed the Complaint pursuant to 28 U.S.C. § 1915(e) and, on March 26, 2025, recommended that the Complaint be dismissed with leave to amend. Dkt. No. 6 ("Report-Recommendation"). Magistrate Judge Dancks advised that pursuant to 28 U.S.C. § 636(b)(1), the parties had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 7-8. [1] No party has filed objections to the Report-Recommendation and the time for filing objections has expired.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

## II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b) advisory committee's notes to 1983 addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 08-cv-322, 2011 WL 933846, at \*1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing such a 'clear error' review, 'the court need only satisfy itself

that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 21-cv-01138, 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 17-cv-0367, 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

 **\*2**  "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 22-cv-567, 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

Because no party has filed any objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

Magistrate Judge Dancks determined that Plaintiff's allegations failed to set forth a claim for excessive force, as Plaintiff did not identify what force the unidentified state trooper purportedly used against him, nor how it was excessive. Dkt. No. 6 at 5-6. Magistrate Judge Dancks also found that Plaintiff's allegations failed to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure. *Id.* at 4-5. As a result, Magistrate Judge Dancks recommended that the Complaint be dismissed with leave to amend. *Id.* at 6-7. The Court agrees with Magistrate Judge Dancks' findings and recommendations for the reasons set forth in the Report-Recommendation. Having reviewed the Report-Recommendation for clear error, and found none, the Court adopts the Report-Recommendation in its entirety.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 6, is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Complaint, Dkt. No. 1, is **DISMISSED with leave to amend**; [2] and the Court further

**ORDERS** that any amended complaint must be filed within **thirty (30) days** of the filing date of this Order; and the Court further

**ORDERS** that, if Plaintiffs file a timely amended complaint, it shall be referred to Magistrate Judge Dancks for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules. [3]

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2025 WL 1291533

---

### Footnotes

1      Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

2      As set forth in the Report-Recommendation, any amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Dkt. No. 5 at 6–7.

3      The Clerk shall also provide Plaintiff, at both his address of record and the future address he provided, Dkt. No. 2, with copies of all unreported decisions herein.

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

497 Fed.Appx. 114
This case was not selected for publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Richard MILLS and Elmer F. Mills, Jr., Plaintiffs–Appellants,

Kodey Mills, Plaintiff,

v.

Brian FISCHER, John B. Lempke, and Corrections Officer Fedora, Defendants–Appellees,

Corrections Officer Jane Doe, Defendant. *

No. 11–276.
|
Sept. 21, 2012.

**Synopsis**
**Background:** Prisoner and adult prison visitor filed suit under § 1983 against New York prison officials based on claim that officials' violations of regulations governing prison visitors violated plaintiffs' First Amendment right of visitation and due process. The United States District Court for the Western District of New York, Arcara, J., granted defendants' motion to dismiss, 2011 WL 91028, and plaintiffs appealed.

**Holdings:** The Court of Appeals held that:

[1] allegations did not state claim for violation of First Amendment right of visitation, and

[2] single incident of defendants' alleged violation of regulations, which resulted in prisoner being deprived of visit with minor son, did not violate due process.

Affirmed.

See also, 645 F.3d 176.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (2)

[1]    **Constitutional Law** 👈 Visitors

       **Prisons** 👈 Visitors

       Even assuming that New York prison violated regulations which provided that birth certificate was adequate identification for minor visitor and that adult approved for visit could vouch for minor's identity by refusing to accept birth certificate of prisoner's minor son, refusing to permit adult visitor to vouch for son's identity, and then limiting adult visitor's visit to 20 minutes out of concern that minor would be left unsupervised, such alleged violations did not state violation of prisoner's and family's First Amendment right of visitation, absent allegations that officials acted with malice. U.S.C.A. Const.Amend. 1; 7 NYCRR 200.1(b)(2)(ii).

24 Cases that cite this headnote

**[2]**    **Constitutional Law**    👈    Conditions of confinement in general

**Prisons**    👈    Visitors

New York prison officials' alleged violations on single occasion of regulations providing that birth certificate was adequate identification for minor visitor and that adult approved for prison visit could vouch for minor's identity by refusing to accept birth certificate of prisoner's minor son and then refusing to permit adult visitor to vouch for son's identity, did not impose atypical and significant hardship on prisoner in relation to ordinary incidents of prison life, as required to state claim for due process violation, in action brought under § 1983. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

3 Cases that cite this headnote

**\*115**   **UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED, AND DECREED** that the district court judgment is **AFFIRMED.**

**Attorneys and Law Firms**

Richard Mills, Romulus, NY, pro se.

Elmer F. Mills, Jr., Byron, NY, pro se.

Kate H. Nepveu, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, on the brief), for Eric T. Schneiderman, Attorney General of the State of New York, Albany, NY, for Appellees.

PRESENT: ROBERT A. KATZMANN, GERARD E. LYNCH and DENNY CHIN, Circuit Judges.

*SUMMARY ORDER*

**\*\*1**   Plaintiffs–Appellants Richard Mills ("Richard"), *pro se,* and Elmer F. Mills, Jr. ("Elmer"), *pro se,* appeal from a January 12, 2011 judgment of the United States District Court for the Western District of New York (Arcara, *J.*) granting Defendants–Appellees' motion to dismiss plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The amended complaint principally alleges that defendants violated plaintiffs' First Amendment rights of association and their federal due process rights by denying Richard—an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS")—a single visit with his sixteen-year-old son Kodey Mills ("Kodey"), and by shortening Richard's visit with Elmer. Specifically, the amended complaint alleges that (1) Elmer and Kodey attempted to visit Richard on October 12, 2009 at the Five Points Correctional Facility, (2) defendants allegedly found Kodey's identification deficient and refused to allow him to visit Richard, and (3) because defendants did not want Kodey, a minor, to remain on facility grounds unsupervised, defendants allegedly shortened Elmer's visit with Richard to about twenty minutes. We assume the parties' familiarity with the remaining facts and the procedural history of the case.

We review *de novo* the district court's dismissal of a complaint pursuant to Rule 12(b)(6). *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief **\*116** that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

 **[1]**   Having reviewed the case *de novo,* we first conclude that the district court properly dismissed plaintiffs' First Amendment claims. Even assuming that inmates and their families have a right to visitation protected by the First Amendment, *see Overton v. Bazzetta,* 539 U.S. 126, 131–32, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003), the amended complaint does not state a plausible violation of that right. Plaintiffs appear to contend that prison officials at Five Points Correctional Facility failed to adhere to a statewide regulation when they denied Kodey a visit with his father even though Kodey presented his birth certificate [1] and Elmer vouched for Kodey's identity. *See* N.Y. Comp.Codes R. & Regs. Tit. 7, § 200.1(b)(2)(ii) ("[B]irth or baptismal certificates shall not be considered adequate identification for an adult visitor; however, they may be used as identification for a minor child. In the case of a minor with no other creditable identification documentation, an adult approved to visit may vouch for the identification of a minor...."). [2]   However, a violation of a state law or regulation in itself does not state a federal claim for relief under 42 U.S.C. § 1983. *See Doe v. Conn. Dep't of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990). Moreover, the essence of plaintiffs' amended complaint is that prison officials allegedly misapplied the applicable state regulation on a single occasion when they refused to permit Kodey to visit Richard, which in turn resulted in a shortening of Richard's visit with Elmer. Assuming that prisoners have a right under the First Amendment to have family visits, that right could not require that visits by family members be permitted on demand, but rather must be subject to reasonable restrictions on the time, place and manner of visits. *See Overton,* 539 U.S. at 132, 123 S.Ct. 2162 (holding that, even assuming a "right of association ... survives incarceration," a regulation which "bear[s] a rational relation to legitimate penological interests" would not violate that right). A rule requiring the production of some form of identification beyond a birth certificate by family members seeking visitation would not be unreasonable. *See id.* at 133, 123 S.Ct. 2162 (noting that "regulations promot[ing] internal security" advance "perhaps the most legitimate of penological goals").

 **\*\*2**   On the other hand, the intentional or malicious deprivation of visitation to a prisoner, even on one occasion, could rise to the level of a constitutional violation. *Cf. Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 36–37, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (O'Connor, J., concurring) ("There are no *de minimis* violations of the Constitution—no constitutional harms so slight that the courts are obliged to ignore them."); *Shakur v. Selsky,* 391 F.3d 106, 110–20 (2d Cir.2004) (holding that prisoner stated First Amendment claim where he alleged that corrections  **\*117**  officer maliciously and intentionally prevented him from attending important religious feast, and rejecting argument that missing one religious feast was *de minimis* ). Here, however, where plaintiffs alleged only rudeness and not malice, we conclude that the amended complaint, even liberally construed, failed to state a plausible claim under the First Amendment. Particularly in light of the fact that New York's actual rule is plainly reasonable, we cannot say that the denial of access on a single occasion by a prison guard who mistakenly applied a more stringent identification rule that was not in itself unreasonable gives rise to a constitutional claim. Thus, plaintiffs' First Amendment claims were properly dismissed.

 **[2]**   Plaintiffs' due process claims were also properly dismissed. A protected liberty interest under the Due Process Clause is "generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Denying an inmate a single visit with his son does not constitute an atypical and significant hardship. *See, e.g., Colon v. Howard,* 215 F.3d 227, 230–32 (2d Cir.2000).

We have considered plaintiffs' remaining arguments and find them to be without merit. Accordingly, the district court's judgment is **AFFIRMED.**

## All Citations

497 Fed.Appx. 114, 2012 WL 4215891

---

### Footnotes

\*   The Clerk of the Court is directed to amend the caption of this case as noted.

1   We note that plaintiffs claimed that Kodey offered a birth certificate for the first time only in opposition to the motion to dismiss. App. 51.

2   We note that this regulation was formerly codified at N.Y. Comp.Codes R. & Regs. Tit. 7, § 200.3(a)(1)(iii). Because the substance of the regulation is unchanged, we cite to the current version for the sake of convenience.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Paul v. Capra, Not Reported in Fed. Supp. (2022)

Case 1:25-cv-01076-ECC-MJK    Document 4    Filed 08/26/25    Page 23 of 32

2022 WL 992845

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Blondine PAUL, Plaintiff,

v.

Michael CAPRA, Superintendent of Sing Sing Correctional Facility; Lieutenant
Williams, of Sing Sing Correctional Facility; Investigator "Isaac", from the Office of
Special Investigations, of the NYSDOCCS; "John Doe" and "Jane Doe", Defendants.

20-cv-5154(NSR)

|

Signed 03/31/2022

**Attorneys and Law Firms**

Blondine Paul, New Rochelle, NY, Pro Se.

Deanna L. Collins, Silverman & Associates, White Plains, NY, Julie Ann Ortiz, Maria Barous Hartofilis, Office of the NYS
Attorney General, New York, NY, for Defendants Michael Capra, Richard Williams, Isaac Lebaron, Anthony J. Annucci.

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

 **\*1**  Plaintiff Blondine Paul ("Plaintiff") commenced this *pro se* action on July 2, 2020, against Michael Capra (Superintendent
of Sing Sing Correctional Facility), Lieutenant Richard Williams (New York State Department of Corrections and Community
Supervision ("DOCCS")), Investigator LeBaron Isaac (Office of Special Investigations ("OSI")), John Doe, and Jane Doe. (ECF
No. 2.) Plaintiff filed an Amended Complaint ("Am. Compl.", ECF No. 21) on March 25, 2021 which also names as a defendant
DOCCS Acting Commissioner Anthony J. Annucci (collectively, "Defendants"). Presently before the Court is Defendants'
motion to dismiss the Amended Complaint. (ECF No. 22.) For the following reasons, the Defendants' motion is GRANTED.

**BACKGROUND**

The following facts are taken from the Complaint and the Amended Complaint, and are construed as true for the purposes of
this motion.

   **I. Factual Allegations**

On June 20, 2017, Plaintiff arrived at Sing Sing Correctional Facility ("Sing Sing") for the purpose of visiting her incarcerated
brother, Hotson Neree ("Neree"). (Am. Compl. at 9.) Plaintiff alleges that upon her arrival at Sing Sing, she was confined
and searched by Investigator Isaac and a Jane Doe corrections officer, and accused by Investigator Isaac of entering Sing Sing
for the purpose of smuggling contraband narcotics. (*Id.*) Plaintiff denies being in possession of any drugs or contraband, and
denies ever "plan[ing] on entering" the facility to smuggle drugs or other contraband. (Compl. at 3.) Plaintiff states that she was
permitted to leave the facility, however she was denied the right to visit her brother at Sing Sing. (Am. Compl. at 10.)

Plaintiff alleges that approximately three weeks later, she received a letter from Superintendent Michael Capra (the "Letter"). (Am. Compl. at 10.)<sup></sup> [1] The Letter states that her visiting privileges at all New York State Department of Corrections and Community Supervision facilities were indefinitely suspended. (Capra Decl. Ex. A.) The Letter further states that her privileges were suspended because on her June 20, 2017 visit, she was interviewed by OSI and the New York State Police were called, and she was "uncooperative and fled the facility." (*Id.*) Therefore, it was determined that she conspired with Neree to smuggle contraband drugs into the facility. (*Id.*) The Letter also notifies Plaintiff that she has 60 days to appeal the decision. (*Id.*)

**\*2** The Letter attaches a memorandum drafted by Investigator Isaac on June 20, 2017. (*Id.*) The memorandum states that an NYSDOCCS OSI investigation was conducted and determined that Neree conspired with Plaintiff to mail into Sing Sing several narcotics. (*Id.*) On April 27, 2017 Neree received a package that contained narcotics. (*Id.*) In addition, there were multiple instances where Neree spoke to Plaintiff on the phone to discuss how the narcotics were to be packaged and when they would be mailed. (*Id.*) On June 20, 2017, when Plaintiff arrived at Sing Sing, she was interviewed by OSI and "voluntarily left the facility grounds." (*Id.*)

Plaintiff states that she appealed the suspension of her visitation rights to Defendant Annucci, who, along with John Doe, upheld Capra's decision. (Am. Compl. at 10). Plaintiff further alleges that Lieutenant Richard Williams has since reviewed Superintendent Capra's decision and has "unjustifiably failed to reinstate" her right to visit her brother. (*Id.*)

## II. <u>Procedural History</u>

Plaintiff's Complaint is signed and dated June 15, 2020. (Compl. at 4.) A return of service form is attached, which contains the declaration of the server, listed as Neree, attesting that Neree mailed the Complaint on June 17, 2020. (*Id.* at 6.)

On October 16, 2020, Defendants informed the Court that they were unable to identify John or Jane Doe and that Investigator Isaac had not yet been served. (ECF No. 9.) On October 28, 2020 the Court ordered Plaintiff to provide Defendants with additional details as well as a description of John and Jane Doe within twenty-five days. (ECF No. 12.) Plaintiff failed to provide such information. Subsequently, Defendants requested a pre-motion conference to discuss their anticipated motion to dismiss on November 24, 2020. (ECF No. 15.)

On January 22, 2021, Plaintiff requested an extension of time to file an amended complaint that would "name [ ] John Doe and Jane Doe", identify the proper time and date of the incidents, and provide arguments as to why the Court should not dismiss the pleading. (ECF No. 16 at 1.) Plaintiff's letter also stated that she had not yet been able to file an amended complaint because the COVID-19 pandemic had prevented her from accessing "local general and law libraries." (*Id.* at 2.) Plaintiff's letter was enclosed in an envelope with Neree's return address at Great Meadow Correctional Facility, and contains a postage stamp indicating that it was placed into the mail on January 19, 2021. (*Id.* at 3.) The Court granted Plaintiff's request and directed that any amended complaint be filed no later than February 26, 2021. (ECF No. 17.)

By letter dated February 22, 2021 and received by the Court on March 4, 2021, Plaintiff requested a second extension of time to file an amended complaint. (ECF No. 19.) Plaintiff stated therein that she was awaiting responses to FOIL requests from Defendants that would "assist [her] in the identification of the Jane Doe and John Doe" defendants. (*Id.* at 1-2.) Plaintiff also stated that an extension was needed due to the COVID-19 pandemic and recent snow storms, which affected her ability to "access the Law." (*Id.* at 2.) Plaintiff's letter was enclosed in an envelope with Neree's return address, this time, at Southport Correctional Facility. (*Id.* at 3.) The postage stamp on the envelope indicates that it was placed into the mail on February 25, 2021. The Court granted the request and directed that any amended complaint be filed no later than March 22, 2021. (ECF No. 20.)

The Amended Complaint was received by the Court on March 25, 2021. (ECF No. 21.) It is signed and dated March 16, 2021. (Am. Compl. at 12.) It does not contain a return of service or declaration of service. Plaintiff mailed the Amended Complaint in an envelope which contains the return address of inmate Moises Almanzer, DIN 18-A-4547, from Southport Correctional Facility, and a postage stamp that indicates it was placed into the mail on March 19, 2021. (*Id.* at 13.) The Amended Complaint

Paul v. Capra, Not Reported in Fed. Supp. (2022)

Case 1:25-cv-01076-ECC-MJK    Document 4    Filed 08/26/25    Page 25 of 32

identifies John Doe as "a counsel member for the NYSDOCCS' Office of Counsel" and Jane Doe as "a corrections staff whom is employed at [ ] Sing Sing." (*Id.* at 6.)

**\*3** Defendants filed their motion to dismiss on July 6, 2021. (ECF No. 22.) Plaintiff failed to file an opposition. (ECF No. 27.)

## LEGAL STANDARD

### I. Motion to Dismiss pursuant to FRCP Rule 12(b)(5)

Under Federal Rule of Civil Procedure 12(b)(5), a complaint may be dismissed for insufficient service of process. When considering a Rule 12(b)(5) motion, a court must look to matters outside of the complaint to determine whether it has jurisdiction. *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). Under Federal Rule of Civil Procedure 4, a plaintiff is required to serve a summons and complaint within 90 days after the complaint is filed, and failure to do so requires the court to "dismiss the action without prejudice against that defendant or order that service be made within a specified time." A court cannot properly exercise jurisdiction over a defendant in absence of "service of [the] summons" and complaint. *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (internal quotation marks omitted). Plaintiff bears the burden of establishing that service was sufficient. *Khan v. Khan*, 360 Fed. App'x. 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)) (internal citation omitted).

### II. Motion to Dismiss pursuant to FRCP Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is considered to be plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not necessary for the complaint to assert "detailed factual allegations," but must allege "more than labels and conclusions." *Twombly*, 550 U.S at 555. Although legal conclusions may provide the "framework of the complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

In the case that a Plaintiff "fails to oppose a motion to dismiss a complaint for failure to state a claim, automatic dismissal is not merited." *Banks v. Royce*, No. 18-cv-4738 (NSR), 2020 WL 5038590, at *2 (S.D.N.Y. Aug. 26, 2020). Therefore, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–323 (2d Cir. 2000).

*Pro se* complaints must be construed more liberally than non-*pro se* complaints. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally"). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). When compared to complaints written by lawyers, *pro se* complaints must be held to less stringent standards, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S 97, 106 (1976) (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). The duty of the court "to liberally construe a plaintiff's complaint [therefore, is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

**\*4**  Pursuant to Section 1983, Plaintiff alleges that Defendants' actions violated (1) her constitutional right to freely associate, (2) her Fourth Amendment rights to be free from illegal searches and seizures and (3) unlawful confinement, and (4) her due process rights to be free from patently false allegations and related determinations that are not supported by substantial evidence. (Am. Compl. at 11). The Court will address each below.

### I. Improper Service

As an initial matter, Defendants aver that both Acting Commissioner Annucci and Investigator LeBaron Isaac have not been properly served. (Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Defs.' MOL") ECF No. 23 at 5.) The Process Receipt and Return for Isaac reflects that service was unexecuted, (ECF No. 18), and Annucci, who was added to this action in the Amended Complaint, was never served. Therefore, all claims against Isaac and Annucci are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

However, Rule 4(m) provides that:

> [i]f a defendant is not served within 90 days after the complaint is filed, the court — on a motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The Court holds that it will exercise its discretion to grant Plaintiff an extension of time to effectuate service. *See e.g.*, *Zapata v. City of New York*, 502 F.3d 192, 195–96 (2d Cir. 2007) (holding an extension proper "even in the absence of good cause"). The Second Circuit has consistently held that *Rule 4* should be construed liberally and that "incomplete or improper service will lead the court to dismiss the action *unless it appears that proper service may still be obtained.*" *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986). As Plaintiff is *pro se*, the Court will grant her an extension.

### II. Section 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) "the challenged conduct was attributable to a person who was acting under color of state law," and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

First, Defendants argue that Plaintiff's Complaint is untimely as it was not filed within the relevant statute of limitations. (Defs'. MOL at 7.) There is no federal statute of limitations for claims brought under Section 1983, therefore courts apply the statute of limitations for personal injury actions under state law. *McLaughlin v. Chong*, No. 13-cv-0807 (NSR), 2016 WL 1276470, at *3 (S.D.N.Y. Mar. 29, 2016). Under New York Law, personal injury actions have a three-year statute of limitations. *See* N.Y. C.P.L.R. § 214(5). Thus, Section 1983 actions filed in New York are subject to a three-year statute of limitations. *See Ormiston*

Paul v. Capra, Not Reported in Fed. Supp. (2022)

Case 1:25-cv-01076-ECC-MJK    Document 4    Filed 08/26/25    Page 27 of 32

*v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) ("New York's three-year statute of limitations for unspecified personal injury actions, New York Civil Practice Law and Rules § 214(5), governs section 1983 actions in New York").

**\*5** Although state law determines the statute of limitations for Section 1983 actions, federal law determines when a claim accrues and the statute begins to run. *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994). A Section 1983 claim accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 187, 191 (2d Cir. 1980) (quoting *Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977)). However, "the reference to 'knowledge of the injury' does not suggest that the statute does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful." *Veal*, 23 F.3d at 724. Rather, a Section 1983 claim accrues when "the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Id.;* (citing *Barrett v. United States*, 689 F.2d 324, 333 (2d Cir. 1982)), *cert. denied*, 462 U.S. 1131 (1983); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[accrual occurs] when the plaintiff has 'a complete and present cause of action', ... that is, when 'the plaintiff can file suit and obtain relief' ") (internal citations omitted). Similarly, Section 1983 actions against unnamed defendants, typically referred to as "John Doe" pleadings, have a three-year statute of limitations. *See Ceara v. Deacon*, 68 F.Supp.3d 402, 409 (S.D.N.Y. 2014) ("Federal and New York courts have held that where there is no indication in the record that a plaintiff has exercised due diligence prior to the expiration of the statute of limitations, a plaintiff is not entitled to make use of the 'John Doe' procedure provided in CPLR § 1024.").

The statute of limitations is "an affirmative defense as to which Defendants carry the burden of showing that Plaintiffs failed to plead timely claims." *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 435 (S.D.N.Y. 2018) (citing *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)). Therefore, "[a] district court may only consider timeliness on a motion to dismiss when the circumstances are 'sufficiently clear on the face of the complaint and related documents as to make the time-bar ruling appropriate....' " *Arco Capital Corps. Ltd. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 543 (S.D.N.Y. 2013) (quoting *LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 157 (2d Cir. 2003)); *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."). Where, as here, the defendant alleges that the plaintiff's claims are untimely, dismissal is improper unless it "appears beyond doubt" that the plaintiff's claim is barred by the applicable statute of limitations. *Egelston v. State Univ. Coll.*, 535 F.2d 752, 754 (2d Cir. 1976).

Here, Defendants argue that Plaintiff's causes of action began to accrue on the day she was allegedly held and searched at Sing Sing, June 20, 2017, and therefore Plaintiff's Complaint, filed on July 2, 2020, must be dismissed as untimely. Plaintiff responds that her claims did not begin to accrue until she received the Letter, "approximately three weeks" after the incident occurred, on or around July 11, 2017. (Am. Compl. at 11-12; Capra Decl. at Ex. A.)

Plaintiff's Amended Complaint can be read liberally to infer that until she received the Letter, Plaintiff did not know of the resulting harm that would be the basis of her causes of action for alleged violations of her rights to "freely associate with others" and "be free from patently false allegations and related determinations." (Am. Compl. at 11.) Plaintiff's allegations show that she was not aware of the full extent of the allegations against her or the Superintendent's decision until she received the Letter. The Court therefore finds it improper to dismiss these two causes of action as time-barred as it is not clear from the face of the Amended Complaint that the statute of limitations has expired. [2]

**\*6** However, the Court holds that it is clear from the face of the Complaint that Plaintiff's Section 1983 claims for alleged violation of her "right to be free from illegal searches and seizures" and "unlawful confinement" are untimely. Plaintiff had knowledge of the conduct and resulting harm on the day she was allegedly confined and searched, June 20, 2017. *See D'Angelo v. Kirschner*, 288 F. App'x 724, 726 (2d Cir. 2008) ("[A] cause of action for unlawful search and seizure generally accrues from the date of the unlawful search."); *Daniels v. City of New York*, No. 18-CV-3717 (RA), 2019 WL 1437586, at \*2 (S.D.N.Y. Mar. 31, 2019) ("For claims of illegal search and excessive use of force, the date of accrual is the date on which the unlawful search or excessive force took place."). Therefore, Plaintiff was required to file suit for these alleged violations on or before June 20, 2020, which she failed to do. While the Complaint is signed by Plaintiff on June 15, 2020, as Plaintiff herself is not

Paul v. Capra, Not Reported in Fed. Supp. (2022)

Case 1:25-cv-01076-ECC-MJK    Document 4    Filed 08/26/25    Page 28 of 32

incarcerated, she cannot utilize the "prison mailbox rule" and therefore only the date the Complaint was filed is relevant for statute of limitations purposes. *See Best v. Newton,* No. 15 Civ. 4316 (ER), 2016 WL 5416505, at *5 n.9 (S.D.N.Y. Sept. 28, 2016) (holding the plaintiff's complaint was untimely where he signed it and gave it to a notary public but it was not filed until after the statute of limitations ran).

The Court nonetheless finds the Complaint to have been filed within the statute of limitations pursuant to New York Executive Order 202.8. "On March 20, 2020, Governor Cuomo issued Executive Order 202.8 declaring a state of emergency due to the COVID-19 pandemic and accordingly, among other things, tolling the time limits for filing legal actions as prescribed by the state's procedural laws." *Bonilla v. City of New York*, No. 20-cv-1704 (RJD) (LB), 2020 WL 6637214 at *1 (E.D.N.Y. Nov. 12, 2020). Specifically, Executive Order 202.8 tolls "any specific time limit for the commencement, filing, or service of any legal action ... as prescribed by the procedural laws of the state." *Id.* at *3. As the Second Circuit has concluded that "the Supreme Court wanted section 1983 actions to be subject to state 'tolling rules,' [and therefore] it seems likely that both statutory and common law rules are to be borrowed", *Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002), the Court holds that Executive Order 202.8 tolled Plaintiff's Complaint. *See Bowers v. City of Salamanca*, No. 20-CV-1206-LJV, 2021 WL 2917672, at *6 (W.D.N.Y. July 12, 2021) ("The Court finds the latter cases more persuasive and follows *Bonilla* in concluding that Executive Order 202.8 applies in section 1983 cases."); *Bonilla*, 2020 WL 6637214 at *3 (finding the toll pursuant to Executive Order 202.8 should be borrowed in the context of Section 1983 which does not provide a federal statute of limitations); *Citi Connect, LLC v. Local Union No. 3, IBEW*, No. 20-cv-5147 (CM), 2020 WL 5940143 at *3–4, (S.D.N.Y. Oct. 7, 2020) (finding the toll pursuant to Executive Order 202.8 should be borrowed in the context of the False Claims Act which does not provide a federal statute of limitations). The Court therefore rejects Defendants' argument that the Complaint is barred as untimely.

Accordingly, the Court finds that the toll pursuant to Executive Order 202.8 should be borrowed in the context of Plaintiff's Section 1983 claims. Therefore, since the three-year statute of limitations for these claims was tolled from the date of the Executive Order, March 20, 2020, through November 3, 2020, Plaintiff's filing of the Complaint on July 2, 2020 is deemed within the statute of limitations and nonetheless timely.

### a. First Amendment Claim

Plaintiff's Amended Complaint may be liberally read to assert a claim regarding the freedom of intimate association under the First Amendment with her brother, Neree.

The First Amendment protects the freedom of intimate association, which includes "choices to enter into and maintain certain intimate human relationships" including "those that attend the creation and sustenance of a family." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–19 (1984) (the Constitution protects "certain kinds of highly personal relationships ... from unjustified interference by the State"). However, the right to intimate association under the First Amendment "is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). "The very object of imprisonment is confinement ... [and as a result,] [m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Id.; see also Sealey v. Olszewksi*, No. 14-CV-3S, 2015 WL 9484521, at *4 (W.D.N.Y. Dec. 29, 2015) ("In the prison-visitation context, the visitor's rights are necessarily tied to the inmate's [rights]" (internal citations omitted)). Therefore, "[s]ome curtailment of [the right to intimate association] must be expected in the prison context." *Overton*, 539 U.S. at 131.

**\*7** In the circumstance that a prison procedure curtails a prisoner or visitor's freedom to associate, the constitutional right is not violated if the procedure "bear[s] a rational relation to legitimate penological interests." *Id.* at 132; *see also Patterson v. City of New York*, No. 11-CV-7976(DLC), 2012 WL 3264354, at *7 (S.D.N.Y. Aug. 9, 2012) ("[L]imitations on visits that are reasonably related to a legitimate penological interest do not violate a prisoner's constitutional right."). The court must consider "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation." *Overton*, 539 U.S. at 132 (quoting *Turner*

*v. Safley*, 482 U.S. 78, 89–91 (1987)). Further, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.*

Here, Plaintiff alleges her right to freely associate with her brother, Neree, was violated by Defendants when her visitation rights were indefinitely suspended, and when this decision was upheld after Plaintiff appealed the suspension to the Commissioner's office. (Am. Compl. at 10.) The Letter states that the suspension was in relation to an OSI investigation that revealed Plaintiff's participation in attempts to smuggle narcotics into the facility and therefore Defendants argue that there is a legitimate penological interest in indefinitely suspending Plaintiff's visitation rights. (Defs.' MOL at 11.)

The Court agrees with Defendants. The Court finds the suspension to be rationally related to the legitimate penological interest of preventing the introduction of drugs or other contraband into Sing Sing. *See Caldwell v. Goord*, No. 09-cv-00945(Sr.), 2013 WL 1289410, at *5 (W.D.N.Y. Mar. 27, 2013) (finding inmate's wife's suspension of visitation privileges and denial for reinstatement due to a conspiracy to smuggle drugs into the correctional facility did not infringe on both inmate and his wife's right of association because the suspension furthered a legitimate penological interest); *Ford v. Fischer*, No. 9:09-CV-723 (DNH/ ATB), 2011 WL 856416, at *12 (N.D.N.Y. Jan. 31, 2011 ("[T]he visiting privileges of [plaintiff's] fiancée were indefinitely suspended in April 2009 because of her alleged involvement in smuggling a note from another inmate to plaintiff" which was "clearly [a] legitimate penological interest[ ] that justified [the] suspension"), *report and recommendation adopted*, 2011 WL 846860 (N.D.N.Y. Mar. 9, 2011); *Hernandez v. McGinnis*, 272 F. Supp. 2d 223, 227–28 (W.D.N.Y. 2003) (holding the plaintiff's suspension of visitation rights served the legitimate purposes of "deterring visit-related misconduct" and "promot[ing] internal security"). Plaintiff's allegations that the suspension was "unjustified" and "baseless" are conclusory. (Am. Compl. at 10.)

Further, although Plaintiff's non-contact visitation rights were suspended, alternative means of communication appear to remain available for both Plaintiff and Neree. *See Hernandez*, 272 F. Supp. 2d at 228 (upholding suspension of visitation rights in part because plaintiff could still communicate with persons outside the prison by letter and telephone). Therefore, the Court finds that Plaintiff has failed to plausibly allege a violation of Section 1983 under the First Amendment.

### b. Fourth Amendment Claims

Plaintiff's Amended Complaint may also be read to assert claims for unreasonable search and seizure and false arrest or imprisonment under the Fourth Amendment.

### *i. False Arrest*

"[F]alse arrest is considered a kind of false imprisonment, and the claims are analyzed in identical fashion." *Mitchell v. Victoria Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005). To prevail on a false arrest claim, a plaintiff must establish: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Probable cause is a complete defense to a false arrest claim. *Id.*; *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer*, 63 F.3d at 119 (internal quotation marks omitted).

**\*8** Here, the Court finds that Plaintiff has failed to state a claim of false imprisonment under the Fourth Amendment as Plaintiff was not confined, but rather was permitted to leave the facility, and in fact did so. (Am. Compl. at 10.) Further, Plaintiff's

allegation that she was "unlawfully confined" (Am. Compl. 9), is merely conclusory as Plaintiff has not put forth a sufficient set of facts to substantiate her claim. Accordingly, Plaintiff's claim for false arrest or imprisonment is dismissed.

### ii. Unreasonable Seizure

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. A person is considered seized if "a reasonable person would have believed that he [or she] was not free to leave." *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984). "[R]easonableness is ... the ultimate standard under the Fourth Amendment...." *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 71 (1992) (internal quotation marks omitted); *see also United States v. Singletary*, 798 F.3d 55, 59 (2d Cir. 2015) (stating that reasonableness is "generally determined by balancing the particular need to search or seize against the privacy interests invaded by such action").

The Court finds that Plaintiff has also failed to state a claim for unlawful search and seizure under the Fourth Amendment. Courts in the Second Circuit have recognized "that the smuggling into prison of contraband is indeed a serious problem which threatens the security of both prisoners and prison employees, and that considerable deference must be paid to the judgment of prison officials in their administration of state penal institutions." *Armstrong v. New York State Comm'r of Correction*, 545 F. Supp 728, 731–32 (N.D.N.Y. 1982). The Court therefore finds that Plaintiff's privacy interests were substantially outweighed by the need to search or seize for contraband when entering Sing Sing. *See United States v. Willoughby*, 860 F.2d 15, 21 (2d Cir. 1988) ("Contacts between inmates and noninmates may justify otherwise impermissible intrusions into the noninmates' privacy."); *United States v. DePonceau*, No. 05-CR-6124L, 2008 WL 222520, at *7 (W.D.N.Y. Jan. 24, 2008), *report and recommendation adopted*, 2008 WL 624110 (W.D.N.Y. Mar. 5, 2008) ("[I]nmates and non-inmate visitors to prisons have diminished expectations of privacy in the prison setting.").

Although plaintiff states that she was "unlawfully searched," she fails to proffer evidence as to the method used to search her as well as how long she was searched for. Without such facts, the Court cannot hold that Plaintiff's Fourth Amendment rights have been violated. *See Lesane v. City of New York*, Case No. 11-CV-2104(HB), 2011 WL 5242721, at *2–3 (S.D.N.Y. Nov. 3, 2011) (holding that plaintiff's Fourth Amendment allegations were insufficient as he failed to "allege facts sufficient to show that the searches were unreasonable, that they failed to serve a reasonable penological goal, or that they were intended to intimidate, harass, or punish him."). In any event, the Court notes that "less invasive searches or seizures are constitutionally permissible conditions on visitation even if not accompanied by any reasonable suspicion." *Amaker v. Annucci*, No. 14-CV-9692 (KMK), 2016 WL 5720798, at *8 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 721 F. App'x 82 (2d Cir. 2018); *see also Spear v. Sowders*, 71 F.3d 626, 630 (6th Cir. 1995) ("[Prison] [v]isitors can be subjected to some searches, such as a pat-down or a metal detector sweep, merely as a condition of visitation, absent any suspicion."). Therefore, the Court finds that Plaintiff has failed to plausibly allege a violation of the Fourth Amendment.

### c. Fourteenth Amendment Claims

**\*9**  Plaintiff's Amended Complaint may also be liberally read to assert violation of her due process rights under the Fourteenth Amendment. (Am. Compl. at 11.)

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment" *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Therefore, to prevail on a procedural due process claim, a plaintiff must show that he or she was deprived of a protected property or liberty interest without notice and an opportunity to be heard. *Reyes v. Cnty. of Suffolk*, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014). To establish a violation of substantive due process, a plaintiff must allege government action so egregious or outrageous that it can be said to "shock the contemporary conscience." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d

Paul v. Capra, Not Reported in Fed. Supp. (2022)

Case 1:25-cv-01076-ECC-MJK    Document 4    Filed 08/26/25    Page 31 of 32

Cir. 2005). Further, where probable cause exists, "there can be no claim for denial of either the procedural or substantive right to due process." *Harris v. Cnty. Of Nassau*, 581 F.Supp. 2d 351, 357 (E.D.N.Y. 2008).

"[C]ourts in the Second Circuit have consistently held that neither the Due Process Clause nor New York state law create a protected liberty interest for inmates with respect to contact visits." *Hernandez v. Sposato*, No. 14-cv-4593 (JFB)(ARL), 2015 WL 4097784, at *4 (E.D.N.Y. July 8, 2015). The same can be said for inmates' family and friends. *see Malavé v. Weir*, No. 3:16-cv-00009 (JAM), 2018 WL 500644, at *7 (D. Conn. Jan. 22, 2018) ("The upshot is that the law of the Second Circuit does not recognize a clearly established right of married partners to engage in either in-person visitation or telephonic communication with one another while one of those persons is in prison."); *U.S. v. Madoff*, No. 09 Cr. 213 (DC), 2016 WL 11551475 at *2 (S.D.N.Y. Nov. 23, 2016) ("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, ... and therefore is not independently protected by the Due Process Clause.") (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)); *Gatson v. Selsky*, No. 94-CV-292(RSP/GJD), 1997 WL 159258, at *4 (N.D.N.Y. Apr. 4, 1997) (holding the plaintiff's wife did not have a liberty interest in family reunion or conjugal visits).

Here, to the extent that Plaintiff alleges a procedural due process claim, the Court finds that Plaintiff has failed to state a claim. In the Second Circuit, inmates and inmate visitors do not have a protected liberty interest to contact visits. *See Hernandez*, WL 4097784 at *4. Therefore, Plaintiff fails to put forth a protected liberty interest to assert a procedural due process claim. Further, Plaintiff was given notice of this alleged deprivation by the Letter informing her of the indefinite suspension of her visitation rights, and was also given an opportunity to be heard by utilizing her right to appeal the determination to the Commissioner's office. (*See* Capra Decl. at Ex. A); *see also Kozlowski v. Coughlin*, 539 F.Supp. 852, 857–58 (S.D.N.Y. 1982) (holding that plaintiff's procedural due process rights were violated when privileges to visit her inmate husband were revoked because plaintiff was not afforded the "opportunity to be heard" or to appeal the determination). The Letter identifies how Plaintiff may appeal the decision, which Plaintiff alleges she in fact did pursue. (*See* Capra Decl. at Ex. A; Am. Compl. at 10.)

 **\*10**  Alternatively, to the extent that Plaintiff alleges a substantive due process claim, Plaintiff also fails to put forth allegations that the denial of her visitation on June 20, 2017 followed by Superintendent Capra's indefinite suspension consisted of "action[s] so egregious or outrageous that [they] can be said to [have] shock[ed] the [Plaintiff's] conscience." *Pena*, 432 F.3d at 112; *see also Hirsch v. City of New York*, 300 F. Supp. 3d 501, 512 (S.D.N.Y. 2018) ("In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity.") (internal quotation marks and citations omitted). Plaintiff's allegations that the denial was an "unjustified determination" and "erroneous" are merely conclusory and therefore do not put forth sufficient facts to state a claim for relief. Therefore, Plaintiff's Section 1983 claims brought under the Fourteenth Amendment must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff is granted leave to file a Second Amended Complaint consistent with this Opinion and Order on or before May 31, 2022. Failure to file a Second Amended Complaint within the time allowed, and without good cause to excuse such failure, will result in dismissal of Plaintiff's Complaint with prejudice. Plaintiff will also have until May 31, 2022 to serve Acting Commissioner Annucci and Investigator LeBaron Isaac if she wishes to proceed with her claims against them.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 992845

Paul v. Capra, Not Reported in Fed. Supp. (2022)

Case 1:25-cv-01076-ECC-MJK    Document 4    Filed 08/26/25    Page 32 of 32

### Footnotes

1    In deciding a motion to dismiss under Rule 12(b)(6), a court "may review only a narrow universe of materials" without converting the motion into one for summary judgment. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This generally includes "documents attached to it or incorporated in [the complaint] by reference" and "documents 'integral' to the complaint and relied upon in it." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014). Therefore, the Court may consider the Letter sent to Plaintiff from Superintendent Capra (Declaration of Michael Capra ("Capra Decl.") ECF No. 24 Ex. A) as it is incorporated by reference in Plaintiff's Amended Complaint. (Am. Compl. at 10.)

2    Defendants also state the Amended Complaint should be "stricken" as it was filed a few days after the Court's deadline. However, "courts [in the Second Circuit] generally have accorded *pro se* litigants latitude with respect to meeting procedural requirements." *Varrone v. Bilott*, 851 F. Supp. 54, 57 (E.D.N.Y. 1993). Therefore, the Court will afford Plaintiff leniency and will not strike the Amended Complaint.

**End of Document**                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.