**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DEJA BOST,

                                   Plaintiff,                          1:25-cv-1076
                                                                       (ECC/MJK)

v.

CSCO HENSON, et al.,

                                   Defendants.


_____

Deja Bost, _Plaintiff, pro se_

**Hon. Elizabeth C. Coombe, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

Plaintiff Deja Bost commenced this proceeding by the filing of a Complaint, and sought leave to proceed _in forma pauperis_ (IFP). Dkt. Nos. 1, 3. This matter was referred to United States Magistrate Judge Mitchell J. Katz who, on August 26, 2025, granted Plaintiff's application to proceed IFP and issued a Report-Recommendation, recommending that Plaintiff's Complaint be dismissed with leave to replead. Dkt. No. 4. Plaintiff was informed that she had fourteen days within which to file written objections to the report under 28 U.S.C. § 636(b)(1), and that the failure to object to the report within fourteen days would preclude appellate review. Dkt. No. 4, at 10. No objections to the Report-Recommendation have been filed.

As no objection to the Report-Recommendation has been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. _See Petersen v. Astrue_, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error, the Court adopts Magistrate Judge Katz's recommendation that the Complaint be dismissed

with leave to amend for the following reasons.

Plaintiff alleges violations of her First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, as well as state law negligence claims, stemming from the Defendants' conduct during her attempts to visit an inmate at Coxsackie Correctional Facility (Coxsackie C.F.). *See generally* Dkt. No. 1. Plaintiff further alleges she was subjected to "unequal treatment and gender-based discrimination." *Id.* at 2. A recitation of Plaintiff's factual allegations is included in Magistrate Judge Katz's Report-Recommendation. Dkt. No. 4 at 1-2.

To the extent Plaintiff asserts a violation of her right to visitation under the First Amendment, Plaintiff's allegations fail to state a plausible claim. At the outset, neither the Supreme Court nor the Second Circuit has outright recognized an individual's right to visitation with an incarcerated family member under the First Amendment, although the Second Circuit has not foreclosed the possibility altogether. *See Overton v. Bazzetta,* 539 U.S. 126, 132 (2003) ("We need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration . . . ."); *Malave v. Weir*, 750 F. App'x 65, 67 (2d Cir. 2019) (recognizing that, for purposes of qualified immunity analysis, "[c]ases in this circuit . . . have not clearly established a right to spousal visitation in prison"); *Mills v. Fischer*, 497 F. App'x 114, 116 (2d Cir. 2012) (assuming without deciding that "inmates and their families have a right to visitation protected by the First Amendment."). Other courts in this district have declined to recognize such a right under the First Amendment. *See Adeyola v. Gibon*, 537 F. Supp. 2d 479, 481 (W.D.N.Y. 2008) ("[T]here is no absolute constitutional right to visitation, and, at the very least, first amendment values must give way to reasonable considerations of prison management.") (internal citations omitted); *Midalgo v. Bass*, 9:03-cv-1128, 2006 WL 2795332, at *16 (N.D.N.Y. Sept. 26, 2006) ("[F]amily visitations for inmates only constitute a privilege and not a right").

Even if this Court were to recognize such a right under the First Amendment, Plaintiff has failed to provide any factual allegations establishing her relationship, if any, to the incarcerated individual she was visiting at Coxsackie C.F.  Furthermore, under these circumstances, where Plaintiff was denied visitation due to the abnormal results of a security body scan, but permitted to return the following day at which time she was admitted for visitation, Plaintiff's allegations fail to amount to a violation of Constitutional proportion.  *See Overton,* 539 U.S. at 137 (acknowledging that "[i]f the withdrawal of all visitation privilege were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particulate inmate, the case would present different considerations.");  *see also Marrero v. Weir*, No. 3:13-cv-0028, 2014 WL 4799228, at *6 (D. Conn. Sept. 26, 2014) ("Indeed, the Court is required to grant 'wide-ranging deference' to prison administrators 'in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'") (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

To the extent Plaintiff seeks to bring a claim of retaliation under the First Amendment, she has also failed to plausibly allege a claim.  "The First Amendment protects the right to free speech and to association as well as the right not to be subject to retaliation for the exercise of one's right to free speech or association." *Roberts v. City of New Haven*, 210 F. Supp. 3d 347, 354 (D. Conn. 2016).  In order to prove a claim of First Amendment retaliation, a plaintiff must show that: (1) she has engaged in protected speech or association; (2) defendant took adverse action against her; and (3) there was a causal connection between the protected speech or association and the adverse action.  *See Gonzalez v. Hasty*, 802 F.3d 212, 222 (2d Cir. 2015); *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (same).  Not every perceived slight constitutes "adverse action" subject to a First Amendment retaliation claim; to the contrary, in the context of a First Amendment

retaliation claim, the Second Circuit has held that "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Zelnik v. Fashion Inst. of Tech*., 464 F.3d 217, 225 (2d Cir. 2006).

Here, the Court liberally construes Plaintiff's allegations to assert that the Defendants refused her visitation on July 26, 2025 in retaliation for appealing the one-year visitation ban assessed against her as a result of her May 3, 2025 visitation denial. Dkt. No. 1 at 1-2. However, in order to successfully plead a claim, Plaintiff must allege either that the retaliation resulted in the actual chilling of the exercise of her constitutional rights, or that she suffered some independent, concrete harm. *See Brink v. Muscente*, No. 11 Civ. 4306, 2013 WL 5366371, at *7 (S.D.N.Y. Sept. 25, 2013) ("Where a plaintiff has sufficiently alleged a concrete harm, and in the absence of a subjective chilling requirement, Second Circuit courts have only required a showing (1) that the First Amendment protected the plaintiff's conduct, and (2) that 'defendants' conduct was motivated by or substantially caused by [the plaintiff's] exercise of speech.'") (quoting *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 222 (N.D.N.Y. 2012), *aff'd*, No. 12 Civ. 1811, 2013 WL 1876610 (2d Cir. 2013)). Here, there is no suggestion that the Defendants' conduct actually chilled the exercise of Plaintiff's First Amendment rights to speech and/or association. Plaintiff alleges that despite being denied on July 26, 2025, she returned the following day, at which time she was permitted entry for visitation. Plaintiff does not otherwise allege that she was subsequently deterred from pursuing visitation, nor does she allege any other forms of concrete harm that have been accepted in place of the actual chilling requirement. *See, e.g., Zherka v. Amicone*, 634 F.3d 642, 645–46 (2d Cir. 2011) ("Hurt feelings or a bruised ego are not by themselves the stuff of constitutional tort."). Accordingly, Plaintiff fails to state a claim.

Plaintiff also asserts claims pursuant to the Fourteenth Amendment, alleging she was

subjected to unequal treatment and gender-based discrimination. Although it is unclear what specific rights Plaintiff contends to be at issue, the Court liberally construes the Complaint to raise violations of Plaintiff's due process and equal protection rights. With respect to the former, Plaintiff has failed to state a claim. A prerequisite to a due process claim is that Plaintiff possess a protected liberty interest. As previously set forth, it is unclear from Plaintiff's allegations what, if any, relationship she bears with the incarcerated individual she sought to visit, i.e. whether they were married or otherwise related, and the nature of the purported visit. Moreover, "[p]rotected liberty interests may be derived from two sources—the Due Process Clause itself and the laws of the States." *Cromwell v. Coughlin*, 773 F. Supp. 606, 610 (S.D.N.Y. 1991) (citing *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). "[C]ourts in the Second Circuit have consistently held that neither the Due Process Clause nor New York state law create a protected liberty interest for inmates with respect to contact visits." *Paul v. Capra*, No. 20-cv-5154, 2022 WL 992845, at *9 (S.D.N.Y. Mar. 31, 2022) (quoting *Hernandez v. Sposato*, No. 14-cv-4593, 2015 WL 4097784, at *4 (E.D.N.Y. July 8, 2015)). "The same can be said for inmates' family and friends." *Id.* (citing *Malavé v. Weir*, No. 3:16-cv-00009, 2018 WL 500644, at *7 (D. Conn. Jan. 22, 2018), *aff'd*, 750 F. App'x 65 (2d Cir. 2019) ("The upshot is that the law of the Second Circuit does not recognize a clearly established right of married partners to engage in either in-person visitation or telephonic communication with one another while one of those persons is in prison."); *see U.S. v. Madoff*, No. 09 Cr. 213, 2016 WL 11551475 at *2 (S.D.N.Y. Nov. 23, 2016) ("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, . . . and therefore is not independently protected by the Due Process Clause.") (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)); *Gatson v. Selsky*, No. 94-cv-292, 1997 WL 159258, at *4 (N.D.N.Y. Apr. 4, 1997) (holding the plaintiff's wife did not have a

liberty interest in family reunion or conjugal visits).

Even assuming Plaintiff plausibly alleged a protected liberty interest, to the extent Plaintiff alleges a procedural due process claim it is clear that Plaintiff was provided an opportunity to be heard by using her right to appeal the one-year visitation ban, which she successfully challenged. *See Capra,* 2022 WL 992845 at *9. Alternatively, to the extent Plaintiff alleges a substantive due process claim, Plaintiff fails to allege how any of the denials of her visitation consisted of "action[s] so egregious or outrageous that [they] can be said to [have] shock[ed] the [Plaintiff's] conscience." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005); *see also Hirsch v. City of New York*, 300 F. Supp. 3d 501, 512 (S.D.N.Y. 2018) ("In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity.") (internal quotation marks and citations omitted). For all of these reasons, Plaintiff fails to allege a due process claim under the Fourteenth Amendment.

To the extent Plaintiff's Complaint can be read to assert a gender-based discrimination claim under the equal protection clause of the Fourteenth Amendment, this too fails. While there "is an obligation on the part of the [C]ourt to make reasonable allowances" when reviewing pro se submissions, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation marks omitted), more than bare legal conclusions are nonetheless required for these claims to survive, *see Iqbal*, 556 U.S. at 678–79. Here, Plaintiff's general assertions of discrimination amount to the one-time denial of her visitation rights because "a body scan showed what she disclosed was a tampon," and that the Defendants "mocked" Plaintiff referencing her prior denied visit which was based on an odor of marijuana. At minimum, Plaintiff has failed to allege facts supporting a plausible inference that "discriminatory intent was a motivating factor."

*Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 438 (2d Cir. 2009) (citing *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977)); *see White v. City of New York*, 206 F. Supp. 3d 920, 931 (S.D.N.Y. 2016) (describing how plaintiffs may show discriminatory intent by pointing to animus on the part of individual officers, an official municipal policy of discriminatory treatment, or a pattern of failing to provide an adequate police response to a protected class) (citation omitted). Moreover, to the extent Plaintiff's claim could be construed as premised on a selective-enforcement or class-of-one theory, Plaintiff has failed to allege facts establishing that others were similarly situated to her. *See Levine v. New York State Police*, No. 21 Civ. 1181, 2022 WL 1987845, at *11 (N.D.N.Y. June 6, 2022) (dismissing class-of-one equal protection claim where the plaintiff failed to allege a particular, similarly situated comparator who was treated differently); *Weinberg v. Village of Clayton, New York*, No. 17 Civ. 21, 2018 WL 4214363, at *19 (N.D.N.Y. Mar. 21, 2018) (dismissing selective enforcement equal protection claim where the plaintiffs failed to plead "sufficient facts for the Court to determine that it is plausible that a jury could ultimately determine that the comparators are similarly situated") (internal quotation and citation omitted). Accordingly, Plaintiff's claims sounding in "discrimination" and "unequal treatment" fail to plausibly state a claim.

Finally, Plaintiff raises a state law claim of negligence in conjunction with the loss of her cell phone, which she alleges was stolen from a locker during her July 27, 2025 visit. Dkt. No. 1 at 2. In the absence of any specific allegation, the Court seriously questions whether Plaintiff has pled sufficient facts from which the Court can reasonably infer that the amount in controversy exceeds $75,000 for purposes of establishing diversity jurisdiction. *See Pucci v. Brown*, 423 F. App'x 77, 78 (2d Cir. 2011) ("[A]lthough [the plaintiff] and the defendant are alleged to be diverse in citizenship, [the plaintiff] has failed to plead any amount in controversy, let alone an amount in

excess of $75,000.”); *see also* Fed. R. Civ. 8(a).  Moreover, because the Court is dismissing Plaintiff's federal claims, supplemental jurisdiction over Plaintiff's state law claims is not appropriate.  *See Kolari v. New York Presbyterian Hosp.*, 445 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).  Finally, notwithstanding the jurisdictional issues, Plaintiff has not alleged facts establishing that the Defendants had a duty to the Plaintiff, that the Defendants breached that duty, and resulting injury to the Plaintiff.  *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 730–31 (S.D.N.Y. 2017).

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Katz's Report-Recommendation, Dkt. No. 4, is **ADOPTED**; and it is further

**ORDERED** that Plaintiff's Complaint, Dkt. No. 1, is **DISMISSED with leave to amend**; and it is further

**ORDERED** that any amended complaint must be filed **within thirty (30) days** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that if Plaintiff files a timely amended complaint, it shall be referred to Magistrate Judge Katz for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 3, 2025

Elizabeth C. Coombe
U.S. District Judge

8